UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAMIRAN DAVID GEORGE, | ) | |
| | ) | No. 14 CV 1643 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) ) ) | |
| | ) | March 15, 2016 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Shamiran David George applied for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 1382 *et seq*. The Commissioner of the Social Security Administration ("SSA") granted her application but reduced her benefits by one-third based on a finding that she receives unearned income in the form of in-kind support and maintenance from her son. George filed this suit seeking judicial review of the reduction of her SSI benefits. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross-motions for summary judgment. For the following reasons, George's motion for summary judgment is granted, the Commissioner's is denied, and the matter is remanded for further proceedings:

**Procedural History**

George applied for SSI on March 24, 2008. (Administrative Record ("A.R.") 17.) An administrative law judge ("ALJ") issued a favorable decision granting her SSI application, but on March 29, 2010, the Commissioner notified George that the

amount of her SSI benefits would be reduced by one-third because she was living in another person's house. (Id. at 13, 29-32.) George requested reconsideration, but the Commissioner's decision was affirmed on May 24, 2010. (Id. at 13, 33-35.) George requested another hearing with an ALJ. (Id. at 13, 40-42.) On April 7, 2011, George and her brother-in-law testified at the hearing, and two weeks later on April 21, 2011, the ALJ affirmed the Commissioner's decision to reduce her SSI benefits by one-third, explaining that George lived in a house owned by her daughter and received "subsidies masked as loans to cover her food and daily living expenses." (Id. at 13, 117-18.)

George then filed a request for review with the Appeals Council challenging the ALJ's decision. (Id. at 119.) On April 4, 2012, the Appeals Council granted George's request for review and remanded the matter back to the ALJ to conduct further proceedings. (Id. at 133-35.) After conducting an additional hearing, on April 16, 2013, the ALJ again determined that George's SSI benefits were properly reduced, but for a different reason. (Id. at 13-16.) This time, the ALJ explained that although George lives in her own house she receives in-kind support and maintenance that warrants a reduction in her SSI pursuant to 20 C.F.R. §§ 416.1140 and 416.1141. (Id. at 14-16.) George filed a request for review with the Appeals Council, and submitted additional evidence and a supporting brief. (Id. at 7-9.) When the Appeals Council denied George's request for review, (id. at 4-6), the ALJ's determination became the final decision of the Commissioner, *see Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). George filed this lawsuit seeking judicial

2

review of the Commissioner's decision, (R. 1); *see* 42 U.S.C. § 405(g), and the parties consented to this court's jurisdiction, (R. 5); *see* 28 U.S.C. § 636(c).

**The ALJ's Decision**

In his April 2013 decision upholding the reduction in George's SSI benefits, the ALJ found that George owns the home in which she lives, but that her son, Noble Farhad, pays George's bills for water, gas, electricity, property taxes, and a drinking water service. (A.R. 15.) The ALJ found that Farhad covers a total of $7,000 of George's expenses each year. (Id.) Based on these facts, the ALJ concluded that George's SSI is subject to a reduction because the in-kind support and maintenance she receives qualifies as unearned income under 20 C.F.R. §§ 416.1102 and 416.1130(b). (Id. at 16.) The ALJ rejected George's argument that the reduction does not apply because the payments represent the proceeds of a loan that are repayable upon her death under her last will and testament. (Id. at 15.) Although the ALJ accepted the validity of George's "testamentary intent" and found that George and Farhad have an oral contract under which Farhad is to be repaid from George's estate upon her death, he nevertheless found that the payments do not qualify as a loan because George "has the option to universally revoke her will or change its provisions so that [Farhad] is not repaid for his financial assistance." (Id.) As such, the ALJ concluded that George's "ability to revoke her last will and testament at any time suggests that such an instrument does not establish a true creditor-debtor relationship." (Id.)

3

In concluding that Farhad's payments represent unearned income to George rather than loan proceeds, the ALJ considered a number of additional factors. The ALJ found that the mother and son relationship between George and Farhad suggests that the payments represent a gift with no expectation of repayment, rather than a debt. (Id.) The ALJ also pointed out that there are no irrevocable instruments creating a true creditor-debtor relationship, no written instruments indicating George's indebtedness, no evidence of partial repayment of debt, and no bookkeeping of payments. (Id.) The ALJ also considered that Farhad pays George's bills directly, rather than giving her money to pay her own bills. (Id.) The ALJ acknowledged George's argument that her oral agreement with her son is enforceable under Illinois law, but characterized Illinois state law as "merely advisory" on the question of whether unearned income is a loan, writing that Illinois cases "fail to properly address the necessity that loans be properly documented and create debts that can only be extinguished by current payments." (Id.) The ALJ wrote that "[t]o hold otherwise would create unfettered license to circumvent federal income and resource rules by post mortem documents unilaterally revocable at any time." (Id.)

Because the ALJ found that George's will can be changed or revoked at any time, he concluded that Farhad's payments do not constitute the proceeds of a loan, and accordingly, the ALJ determined that George receives unearned income under 20 C.F.R. §§ 416.1102 and 416.1130(b). (Id. at 15-16.) Citing the presumed value rule that applies where a claimant receives unearned income in the form of in-kind

support and maintenance, the ALJ upheld the decision to reduce George's SSI benefits. (Id. at 16.)

**Analysis**

George argues that the ALJ's determination is not supported by substantial evidence because, according to her, the ALJ mischaracterized the evidence and misapplied the law. (R. 12, Pl.'s Mem. at 1.) She asserts that the record, case law, and regulations support the conclusion that she does not receive unearned income but rather receives a bona fide loan from her son. (Id. at 1, 5.) The government counters that although the ALJ's decision is "not perfect," he made a reasonable determination based on substantial evidence that George's in-kind support and maintenance is not the product of a bona fide loan agreement. (R. 16, Govt.'s Mem. at 3-4, 8.) The government argues that the unearned income characterization is correct because the arrangement is conditional to the extent that George is able to revoke or change the provisions of her will unilaterally at any time. (Id. at 4.) Accordingly, the government argues, the ALJ's decision to reduce George's SSI payments is supported by substantial evidence. (Id. at 8.)

This court reviews the ALJ's decision only to ensure that it is free of legal error and supported by substantial evidence, defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (internal quotation omitted). Under that standard, the court will not substitute its judgment for the ALJ's, reconsider evidence, or reweigh the claimant's credibility. *Elder v. Astrue*, 529 F.3d 408, 413

5

(7th Cir. 2008). At the same time, the court will not "simply rubber-stamp the Commissioner's decision without a critical review of the evidence" and will ensure that the ALJ built a "logical bridge from the evidence to his conclusion." *Minnick*, 775 F.3d at 935 (internal quotations and citations omitted).

The central issue in this case is whether the ALJ committed an error of law in characterizing George's and Farhad's arrangement as providing unearned income rather than a bona fide loan. As the ALJ found, Farhad's payments of George's taxes and utilities fall within the regulatory definition of "in-kind support and maintenance." *See* 20 C.F.R. § 416.1130(b); (A.R. 15). The ALJ did not question George's testamentary intent for Farhad to be repaid for this in-kind support and maintenance after her death from the proceeds of her estate. (A.R. 15.) But George argues that her arrangement with Farhad is a binding and enforceable oral contract representing a bona fide loan, and accordingly, she asserts that the ALJ committed an error of law in applying the presumed value rule to reduce her benefits.

Because SSI is a benefit program based on need, benefit eligibility is determined based on a claimant's income and resources. *See* 42 U.S.C. § 1382(a)(1); 20 C.F.R. § 416.1100. In calculating income for purposes of SSI eligibility, in-kind support and maintenance is taken into account. *See* 20 C.F.R. § 416.1130; *Hassbrock v. Barnhart*, 457 F.Supp.2d 736, 739 (S.D. Tex. 2006). "In-kind support and maintenance" is defined as any food or shelter that is given to the claimant or expenses paid on behalf of the claimant by someone else. 20 C.F.R. § 416.1130(b). Specifically, "[s]helter includes room, rent, mortgage payments, real property taxes,

heating fuel, gas, electricity, water, sewerage, and garbage collection services." *Id*. If a claimant receives in-kind support and maintenance, the SSA reduces the amount of SSI to which a claimant is entitled using two alternative rules: the one-third reduction rule and the presumed value rule. *See Id*. §§ 416.1130(c), 416.1131, 416.1140. Under the one-third reduction rule, the SSA applies a fixed reduction of one-third of the federal benefit rate if a claimant: (1) lives in another person's household; and (2) receives both food and shelter from the person in whose household the claimant lives. *Id*. § 416.1131(a); POMS SI 00835.200. By contrast, where the claimant owns and lives in her own home but receives in-kind support and maintenance, the presumed value rule governs. 20 C.F.R. § 416.1140; POMS SI 00835.300. That rule presumes that any food or shelter a claimant receives as in-kind support and maintenance is worth a maximum value, which is described as one-third of a claimant's federal "benefit rate plus the amount of the general income exclusion described in 20 C.F.R. § 416.1124." *See* 20 C.F.R. § 416.1140; POMS SI 00835.300.

Here, the ALJ found that George lives in her own house, but wrote initially that the one-third reduction rule would apply if she received other support and maintenance. (A.R. 14-15.) Because the ALJ found that George does not live in another person's household, the one-third reduction rule could not apply. *See* 20 C.F.R. § 416.1131(a); POMS SI 00835.200. But the ALJ's initial reference to that rule appears to be a typographical error, and in any event, a harmless one. In his discussion of the issue the ALJ found that George owns her own home and focused

7

his analysis on whether the payments from her son could be considered unearned income under the presumed value rule. Moreover, in his conclusion section the ALJ cited the presumed value rule in explaining the decision to uphold the reduction of benefits. (A.R. 16.) Because the ALJ's substantive discussion encompasses the presumed value rule and because he cited the correct rule in explaining his conclusions, the court does not find that his mistake in referencing the one-third reduction rule earlier in the decision impacted the outcome or otherwise constitutes harmful error. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (noting that ALJ's error is harmless if court "can predict with great confidence that the result on remand would be the same"). Accordingly, this court will focus its review on whether the ALJ committed an error of law in applying the presumed value rule.

In arguing that the presumed value rule does not apply here, George asserts that under the SSA's policy interpretations defining loans, the payments from her son should be considered an enforceable and bona fide loan, not unearned income. (R. 12, Pl.'s Mem. at 8, 10.) Specifically, she argues that Farhad has made payments in reliance on their oral agreement and with an expectation that he will be paid back upon George's death from the proceeds of her estate, and that their agreement is enforceable under Illinois law. (Id. at 7-8.) George bears the burden of establishing that in-kind support and maintenance constitutes a bona fide loan. *See* SSR 92-8p, 1992 WL 466905, at *3 (Sept. 8, 1992).

8

In support of her argument that the relevant payments have been made pursuant to an enforceable loan, George relies on two relevant SSA documents. The first is a binding SSA policy defining a loan as:

> 1. [A]n advance from lender to borrower that the borrower must repay, with or without interest. A loan can be cash or an in-kind advance in lieu of cash . . . . This applies to any commercial or noncommercial loan (between relatives, friends or others) that is recognized as enforceable under State law. The loan agreement may be oral or written, as long as it is *enforceable under State law*.
>
> 2. Any advance an SSI applicant or recipient receives that meets the above definition of a loan is not income for SSI purposes since it is subject to repayment.

*See* SSR 92-8p, 1992 WL 466905, at *2 (emphasis added); *see also Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999) (noting that SSRs are binding on ALJs). As George points out, according to this policy whether a payment constitutes a loan for purposes of SSI turns in part on the enforceability of the agreement under state law. She also points to a non-binding, but instructive, Program and Operations Manual System (POMS), POMS SI 00835.482B (available at https://secure.ssa.gov/poms.nsf/lnx/0500835482#b), stating that a bona fide loan for purposes of SSI eligibility must meet all five of the following requirements: (1) be enforceable under state law; (2) be in effect at the time the in-kind support and maintenance is provided; (3) include an obligation to repay that both the borrower and the lender acknowledge, and that is unconditional; (4) include a plan or schedule for repayment in which the borrower expressly acknowledges her intent to repay the loan either by selling property or with current or anticipated income; and (5) repayment of the loan must be feasible. *See also Wash. State Dep't of Soc. &*

*Health Servs. v. Guardianship Estate of Kefeler*, 537 U.S. 371, 385 (2003) (characterizing POMS as administrative interpretations that warrant respect even though not the product of formal rulemaking).

In concluding that Farhad's payments to George do not represent the proceeds of a bona fide loan, the ALJ stated that he was "not questioning" the presence of an oral contract. (A.R. 15.) But instead of analyzing the enforceability of that oral contract under Illinois law, the ALJ principally reasoned that because George "has the option to universally revoke her will or change its provisions," the payments are a gift and not a loan. (Id.) The ALJ essentially took the position that the enforceability of subject oral agreement and the revocability of George's will are mutually exclusive. The ALJ neither cited nor analyzed SSR 92-8p or the relevant POMS in making that assertion, or anywhere else in his decision. But in defending the ALJ's decision, the government highlights the POMS specification that the loan must convey an "unconditional" obligation to repay, *see* POMS SI 00835.482B, and argues that the "outcome determinative" aspect of the ALJ's decision is his conclusion that George's and Farhad's arrangement is conditional,[1] (R. 16. Govt.'s Mem. at 4). The government argues that the ALJ's statement regarding the revocability of George's will shows that he concluded that George's and Farhad's arrangement does not meet the POMS requirement for an unconditional obligation

---

[1] In its brief the government alternately refers to the relevant POMS as POMS SI 00835.423, (R. 16, Govt.'s Mem. at 5), POMS SI 00835.842, (id. at 7), and POMS SI 00835.482, (id.), but since the latter is the only document among these citations that appears to exist, the court assumes all of the citations are intended to reference POMS SI 00835.482.

10

to repay. It therefore argues that the ALJ's failure to analyze the enforceability of the oral agreement under Illinois law makes no difference in the outcome.

The government's position here runs into a number of obstacles, not the least of which is the *Chenery* doctrine. The *Chenery* doctrine precludes the government from defending an agency's decision on grounds that do not appear in the decision itself. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88-89 (1943). As the Seventh Circuit has made clear, this court may not affirm an ALJ's decision based on a post-hoc rationale articulated in the briefing but never considered by the ALJ. *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014). Here, the government defends the ALJ's decision based largely on its assertion that the ALJ's reference to the revocability of George's will is consistent with the POMS factor stating that a bona fide loan must include an "unconditional" obligation to repay. But the ALJ never referenced POMS SI 00835.482B, and nothing in the ALJ's decision gives the court any confidence that he considered the factors set out in that policy explanation or the relevant, binding SSR. On the contrary, the ALJ contradicted the relevant SSR when he explicitly held against George her familial relationship with Farhad, stating that their "mother and son relationship . . . further suggests that [Farhad's] payments are a gift with no expectation of repayment, rather than a debt." (A.R. 15.) SSR 92-8p explicitly states that the federal regulation's definition of a loan includes noncommercial loans between family members. SSR 92-8p, 1992 WL 466905, at *2. The government tries to gloss over the ALJ's statement by characterizing it as a credibility assessment, suggesting that the fact that George

and Farhad are mother and son makes it less credible that Farhad expects to be paid back for his support payments. (R. 16, Govt.'s Mem. at 8.) But again, there is no reference to a credibility analysis anywhere in the ALJ's decision, so the government may not defend the opinion on that ground. *See Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014). In the absence of any credibility discussion, this court will not assume that the ALJ's statement regarding the impact of George's and Farhad's relationship reflects an adverse credibility determination, rather than a failure to apply SSR 82-9p in evaluating the relevant payment arrangement. *See Ceguerra v. Sec. of HHS*, 933 F.2d 735, 738 (9th Cir. 1991) (noting that court will not affirm ALJ's conclusion that maintenance payments are a gift rather than a loan based on credibility where the ALJ made no credibility findings).

Even putting aside the *Chenery* issue, the government's position here rests largely on another idea that the Seventh Circuit has accused it of misusing: the harmless error doctrine. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (collecting cases criticizing government's use of harmless error arguments in social security context). Specifically, the government concedes that the ALJ erred in explaining that the maintenance payments are not a loan because "[t]here is no evidence that the claimant has started to repay [Farhad]" and by stating that there is a "necessity that loans . . . create debts that can only be extinguished by current payments." (A.R. 15.) The government acknowledges that the relevant POMS—the same one the government insists the ALJ applied in concluding that the agreement is conditional—states that a loan can be repaid by "anticipated income." *See* POMS

SI 00835.482B. The government nonetheless argues that the ALJ's error is harmless because he "gave other reasons that are outcome determinative." (R. 16, Govt.'s Mem. at 7.) But because the ALJ's "other reasons" overlook and contradict the relevant SSR and POMS, this court cannot say with confidence that the ALJ's conclusion would have been the same had he not held George's and Farhad's relationship against George and had he explicitly analyzed and discussed the pertinent factors defining a loan. *See Schomas*, 732 F.3d at 707.

The ALJ's statement that Illinois state law is "merely advisory" with respect to whether George's and Farhad's arrangement constitutes a bona fide loan also raises a red flag. (A.R. 15.) Both SSR 82-9p and the relevant POMS unequivocally state that to constitute a loan the agreement must be enforceable under state law. SSR 92-8p, 1992 WL 466905, at *2; POMS SI 00835.482B. In fact, the relevant POMS states that an ALJ must evaluate all of the bona fide loan requirements "starting sequentially with requirement #1," which is the requirement that the agreement must be enforceable under state law. POMS SI 00835.482B. But instead of addressing the enforceability of the loan agreement under Illinois law, or acknowledging that state law is a relevant factor under the applicable federal regulatory policies, the ALJ brushed off George's reliance on Illinois contract law as unpersuasive. (A.R. 15.) The government concedes that the ALJ's reference to state law being "merely advisory" is "unartfully expressed," but argues that enforceability under state law is only a necessary, but not a sufficient, condition in analyzing whether an agreement qualifies as a bona fide loan under the federal regulatory

13

scheme. (R. 16, Govt.'s Mem. at 5.) The ALJ is correct that it is the Code of Federal Regulations that is binding here, but because the binding SSR interpreting the relevant regulation requires an ALJ to consider the enforceability of the agreement under state law, the ALJ's explicit disregard of state law cements the court's doubt that the ALJ considered the relevant ruling in analyzing George's claim.

George argues that there is only one correct interpretation of the payment arrangement under the relevant regulations and that accordingly, the court should award benefits rather than remand for further proceedings. But the court finds that a correct interpretation will require new engagement with the underlying facts here, and it is the ALJ's role, not the court's, to weigh the facts. *See Elder*, 529 F.3d at 413. Under Illinois law the existence of an enforceable contract is question of fact to be determined by the fact finder. *See Laughlin v. France*, 607 N.E.2d 962, 970 (Ill. App. Ct. 1993); *see also Remapp Int'l Corp. v. Comfort Keyboard Co.*, 560 F.3d 628, 633 (7th Cir. 2009) (characterizing existence of a contract in federal court as "a mixed question of law and fact"). Here, the ALJ made factual findings regarding the support payments Farhad has been making on George's behalf, but did not make any express findings of fact regarding the circumstances underlying George's and Farhad's oral agreement. (A.R. 15.) Without such findings, the court is not in a position to evaluate the enforceability of the agreement under Illinois law. That is particularly true given the tension in the ALJ's decision between his acknowledgment that George has the "intent at the instant moment" that Noble be repaid, while at the same time suggesting that Farhad's payments might be a gift

14

which Farhad does not expect to recoup. (Id.) Because the ALJ did not engage in any credibility analysis, the court is unable to determine whether or not he believed that George and Farhad intended to be bound by what the ALJ described as a "presen[t] oral contract."[2] (Id.) Given the lack of clear factual findings, the court is not in a position to analyze the enforceability of the oral agreement in the first instance. *Cf. Allen v. Sullivon*, 780 F. Supp. 750, 753-54 (D. Kan. 1991) (analyzing enforceability of oral loan agreement to repay in-kind maintenance where ALJ made factual findings regarding the intent to repay and terms of agreement).

The ALJ's decision also leaves open an ambiguity in that on the one hand, he writes that he is "not questioning the valid existence of testamentary intent or a presen[t] oral contract that [Farhad] be repaid through the claimant's estate upon her death," but on the other hand, he writes that George's intent in the present "is not an issue," because she could revoke her will at any time. (A.R. 15.) Therein lies the confusion. George is not arguing that her will represents the loan agreement, but rather that the will is one form of evidence of her underlying—and according to her, irrevocable—oral contract with Farhad. The ALJ did not explain why under Illinois law, George's promise to make a will to reimburse her son for the payments cannot create an enforceable and binding obligation that is not "subject to change at the testator's whim." *See Berry v. Berry*, 336 N.E.2d 239, 243 (Ill. App. Ct. 1975) (contrasting contractual obligation with testamentary disposition); *In re Briick's*

---

[2] In fact at the hearing, the ALJ expressed considerable skepticism on that point, noting that Farhad may be making payments out of a "filial duty of children to help out their parents" rather than pursuant to a loan agreement. (A.R. 217.)

15

*Estate*, 164 N.E.2d 82, 91 (Ill. App. Ct. 1959) ("The remedy of a person injured by the violation of a contract to make testamentary provision for another must be pursued in a court of equity and not in a court of probate."). The court acknowledges the ALJ's concern that accepting George's characterization of the payments as a loan "would create unfettered license to circumvent federal income and resource rules by post mortem documents unilaterally revocable at any time." (A.R. 15.) But that sounds like a public policy consideration to be analyzed in the course of evaluating the agreement's enforceability under state law. *See Laughlin*, 607 N.E.2d at 971. On remand, the ALJ must consider the facts surrounding George's oral agreement with Farhad in the context of SSR 82-9p and explain how those facts support or detract from the enforceability of their oral agreement under Illinois law. *See, e.g.*, *Kahn v. First Nat'l Bank of Chi.*, 576 N.E.2d 321, 324-25 (Ill. App. Ct. 1991) (noting that statements of testamentary intent and evidence of support and care do not necessarily provide sufficient proof of enforceable contract to make will); *Hassbrock*, 457 F. Supp. 2d at 742-43 (remanding for further development where ALJ did not properly analyze whether payments were gratuitous or a loan). In conducting that analysis, the ALJ should bear in mind that "[c]ontracts to dispose of property by will do not stand on an especially favored footing, and courts more strictly examine the nature and circumstances of such agreements," *see Laughlin*, 607 N.E.2d at 970 (internal quotation and citation omitted).

## Conclusion

For the foregoing reasons, George's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings consistent with this opinion. *See Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (noting that remand necessary where ALJ commits error of law or rests decision on factual omission). On remand the ALJ should clarify the facts surrounding the subject oral contract and analyze those facts under SSR 82-9p in determining whether the in-kind support and maintenance George receives from her son constitutes a gift or a bona fide loan.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**